UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE SHANNON SCOTT,

        Petitioner,        Case No. 2:16-cv-206

v.        Honorable Gordon J. Quist

JEFFREY WOODS,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

### Factual Allegations

In accordance with a plea agreement, on May 29, 2014, Petitioner Lawrence Shannon Scott pleaded guilty in the Kent County Circuit Court to second-degree murder, MICH. COMP. LAWS

§ 750.317, and possession of a firearm during the commission of a felony, second offense, M‌ICH. C‌OMP. L‌AWS § 750.227b.  Petitioner has attached to his petition the prosecutor's description of the plea agreement under which he pleaded guilty:

> MS. KONCKI:  . . . Upon a successful plea and sentence as charged to count one in the murder file, which is murder, second degree, and to count two, the felony firearm, second offense, which is a five-year, consecutive offense, the People have agreed to dismiss all other counts in that case and the supplemental information and notices.[1]  And we've also agreed to nolle pros, or dismiss, the perjury file.  And there is a sentence recommendation of twenty years on the murder, second degree, plus five years consecutive on the felony firearm, second.
>
> Those are the major points about the offer, your Honor.  I have previously sent a letter dated May 22nd, 2014 to the defense entitled Proposed Plea Offer that outlines all the details completely of the plea offer, and I've made a copy for the Court, and asked it be marked as an Exhibit to be made part of the record.

(Plea Tr., 4, ECF No. 2-1, PageID.31.)

On June 23, 2014, two weeks before he was scheduled to be sentenced, Petitioner filed a pro per motion to substitute counsel and a motion to withdraw the plea (ECF Nos. 2-2, 2-3, PageID.32-37).  Petitioner argued that there had been a complete breakdown in his relationship with his attorney caused by the attorney's ineffective assistance of counsel in not providing Petitioner with the discovery he had repeatedly requested.  The court heard Petitioner on his motions at the beginning of the sentencing hearing held on July 7, 2014.  Petitioner represented at the hearing that he had told his attorney that he was actually innocent and that he wanted to receive all discovery from the prosecutor.  He asserted that the trial counsel had not visited him and had never produced the information for Petitioner or his family, at their requests.  The court inquired of defense counsel and of the prosecutor about the truth of Petitioner's representations.   Defense counsel responded as follows:

---

[1] The referenced supplemental information and notices includes a charge of habitual offender, fourth offense, M‌ICH. C‌OMP. L. § 769.12.

> MR. MILLER: Thank you, your Honor.
>
> I would disagree with – with the representations made. I did meet with M. Scott at the jail, spoken with him on a number of occasions. I've reviewed the discovery that we had with him; I reviewed everything that we had. All the discovery that I was provided by the prosecution was given to [Petitioner].
>
> I also mentioned in chambers that I had discussed the plea with him. In fact, there was a plea offer made by Ms. Koncki; and there was another plea offer that Mr. Forsyth – Mr. Forsyth insisted. I talked with Ms. Koncki, we had further negotiations; and we were able to secure the better bargain, the original bargain, which was a better plea offer for him.
>
> Prior to his coming in and – making a plea, we brought him over to, I believe it was the court next door, or one of the courtrooms, and we sat down – Detective Boillat was there, Ms. Koncki was there, I was there – reviewed all of the discovery with him, told him everything that the prosecution had, everything, all the videos, all the documentation that they had.
>
> After that I met with [Petitioner], I explained everything to him. We reviewed that again, we talked about that. I asked him what his – what his preference was.
>
> I did review his guidelines, being a supp four, that his guidelines would be 270 to 950 [months] if he lost. I also explained to him and I stressed to him that the statute itself does not require intent; it requires that he engaged in – or the willful disregard, the likelihood, the natural tendency of said act would cause great death or – death or great bodily harm. I stressed that to him. I told him that it would be very difficult to overcome at trial. He knew all of this. He entered into his – his plea freely and voluntarily. He knew what he was doing; he made that plea.

(Sentencing Tr. (S. Tr.), 6-7, ECF No. 2-1, Page ID.26-27.) In response, Petitioner told the court that defense counsel was lying. He admitted meeting with the prosecutor and the officer, but he denied that he had been shown evidence. Petitioner represented that the only thing he had been shown was the police report. (*Id.*, PageID.27-28.)

Somewhat later, the court inquired of the prosecutor whether defense counsel's descriptions of what had transpired were essentially accurate. The prosecutor responded as follows:

> MS. KONCKI: They are, your Honor. There's also a recording of that meeting. I've given a copy to the defense. I have a copy I can mark as an exhibit if the Court would like to do that; it's dated May 27, 2014.

(*Id.*, PageID.29.) The court declined to make the substance of the recording a part of the court record, but agreed to make it available. (*Id.*) The court then ruled as follows:

> THE COURT: The motion to substitute counsel or to, alternatively, to withdraw his plea, if that is an alternative relief that the defendant seeks, is respectfully denied. The Court finds the defendant is an intelligent, articulate young man with a substantial criminal record; that he has had many different opportunities to understand and comprehend the manner in which the criminal justice system operates. He made a knowing, intelligent, voluntary decision to enter a plea resolution of the charges before the Court. He has pled guilty to and will be sentenced today to homicide, murder in the second degree, and felony firearm as a second . . . .

(*Id.*, PageID.29.)[2] The court then sentenced Petitioner in accordance with the plea agreement to a prison term of 20 to 50 years on the murder conviction and a term of 5 years on the felony-firearm conviction, to run consecutively and prior to the murder conviction. Both sentences were imposed consecutively to the sentences for the offenses on which Petitioner was on parole at the time he committed the murder. (*Id.*, PageID.30.)

Petitioner sought leave to appeal his convictions to both the Michigan Court of Appeals and the Michigan Supreme Court, raising the following two issues:

I. THE TRIAL COURT DEPRIVED [PETITIONER] OF HIS SIXTH AMENDMENT RIGHTS AND IMPROPERLY DENIED A REQUEST FOR SUBSTITUTE COUNSEL WHERE THERE HAD BEEN A COMPLETE BREAKDOWN IN THE ATTORNEY-CLIENT RELATIONSHIP.

II. THE TRIAL COURT ABUSED ITS DISCRETION AND DEPRIVED [PETITIONER] OF HIS RIGHT TO DUE PROCESS BY NOT ALLOWING HIM TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING.

(Pet., ECF No. 1, PageID.2.) On December 8, 2014, the court of appeals denied leave to appeal for lack of merit in the grounds presented.

---

[2]Petitioner has attached an incomplete copy of his sentencing hearing. The four pages of the transcript immediately following the quoted language are missing. Nevertheless, the Court finds that the attached documents are sufficient to decide the issues before the Court, given the applicable standard of review in habeas proceedings.

Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same two claims presented to and rejected by the court of appeals, together with the following additional issues:

> III. ON ITS FACE THE COMPLAINT WAS INSUFFICIENT TO ARREST, CHARGE AND BRING [PETITIONER] TO COURT WHERE THE COMPLAINT MUST BE SIGNED AND SWORN TO BEFORE A JUDICIAL OFFICER OF THE COURT.
>
> IV. [PETITIONER'S] RIGHT TO A FAIR TRIAL W[AS] VIOLATED WHEN THE PROSECUTOR FAILED TO TURN OVER DISCOVERY MATERIALS, WHICH VIOLATED BRADY V MARYLAND, 373 U.S. 83, 10 L.Ed.2d 215; 83 S.Ct. 1194 (1963).

(*Id.*) The Michigan Supreme Court denied leave to appeal on September 9, 2015.

In his habeas application, Petitioner raises only the first two issues, which he describes somewhat differently:

> I. THE TRIAL COURT DEPRIVED [PETITIONER] OF HIS SIXTH AMENDMENT RIGHTS AND IMPROPERLY DENIED A REQUEST FOR SUBSTITUTE COUNSEL WHERE THERE HAD BEEN A COMPLETE BREAKDOWN IN THE ATTORNEY-CLIENT RELATIONSHIP IN VIOLATION OF MICHIGAN AND U.S. CONSTITUTIONS.
>
> II. THE TRIAL COURT ABUSED ITS DISCRETION AND DEPRIVED MR. SCOTT OF HIS RIGHT TO DUE PROCESS BY NOT ALLOWING HIM TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING, AND HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS TRIAL COUNSEL FAILED TO PROVIDE HIM WITH DISCOVERY MATERIAL AND INFORM HIM OF POSSIBLE DEFENSES.

(Br. in Supp. of Pet., ECF No. 2, PageID.6.)

## **Discussion**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given

effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it

decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

    I.    Ground I: Denial of Substitute Counsel

Petitioner contends that he was deprived of his rights under the Sixth Amendment of the United States Constitution and under the Michigan constitution, when the trial court denied his motion to appoint substitute counsel.

To the extent that Petitioner claims that the denial of his motion violated the Michigan constitution, his claim is not cognizable in this proceeding. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

With respect to his federal constitutional claim, Petitioner fails to demonstrate entitlement to relief. The Sixth Amendment provides a criminal defendant with the right "to have

the Assistance of Counsel for his defense." U.S. Const., amend. VI. One element of that right is the right to have counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). However, the right to counsel of choice is not without limits. *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007). "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). "'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'" *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").

Petitioner's motion to appoint substitute counsel was filed less than two weeks before his scheduled sentencing hearing and nearly four weeks after Petitioner had pleaded guilty. The motion asserted a breakdown in the attorney-client relationship. The claimed breakdown was exclusively based on Petitioner's assertion that defense counsel had rendered deficient performance by neglecting to review the government's discovery materials and witness testimony. Petitioner complained that counsel nevertheless had advised him to plead guilty, stressing that it would be unwise for Petitioner to stand trial given the number of witnesses willing to testify against him. Petitioner represented to the court that he had repeatedly requested discovery materials, that counsel had never provided them, and that counsel had told Petitioner's family that he never had the discovery materials. As a result, Petitioner claimed, his relationship with his attorney had been destroyed.

The trial court addressed Petitioner's allegations concerning counsel's performance by inquiring of both defense counsel and the prosecutor about the accuracy of Petitioner's representation that he had been denied access to discovery and that his attorney had failed even to obtain discovery from the prosecutor. As previously set forth in this Opinion, both attorneys declared on the record that Petitioner had been fully informed of the evidence possessed by the prosecution, that he had been shown all of that evidence, and that he had had a thorough discussion of the evidence in the presence of defense counsel, the prosecutor and the lead investigator.

After hearing the representations of both Petitioner and defense counsel, the trial court also ensured that defense counsel continued to feel able to represent Petitioner at sentencing, despite Petitioner's expressed dissatisfaction:

> THE COURT: The matter before the Court is defendant's motion for substitution of counsel.
>
> Mr. Miller, are you confident you can proceed to sentencing with this defendant?
>
> MR. MILLER: I am, your Honor.

(S. Tr., 11, PageID.29.)

Based on all the information before it, the trial court denied Petitioner's motion to substitute counsel. That denial necessarily reflected an implicit finding that counsel was more credible than Petitioner, that counsel had provided the requested discovery to Petitioner, and that counsel therefore had not rendered ineffective assistance.

Under the AEDPA, the trial court's factual finding that counsel provided the requested discovery and fully informed Petitioner is presumed to be correct, and Petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. Petitioner has utterly failed to

provide any such evidence. He merely reiterates his original argument. Such an argument is wholly insufficient to overcome the presumption of correctness. Moreover, the trial court's decision to deny the motion for substitute counsel was patently reasonable. Petitioner's claim that defense counsel had failed to provide him discovery was unsupported by evidence and was at odds with the specific representations of both defense counsel and the prosecutor. The trial court therefore reasonably concluded that Petitioner had failed to demonstrate good cause for substituting counsel.

II.     Denial of Motion to Withdraw the Plea

Petitioner's second ground for habeas relief is that the trial court deprived him of due process when it refused to allow him to withdraw his guilty plea.

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A plea cannot be voluntarily and intelligently made where a defendant does not receive "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). "Without adequate notice of the nature of the charge against him, or proof that he in fact

understood the charge, the plea cannot be voluntary." *Henderson v. Morgan*, 426 U.S. 637, 645 (1976). And where a defendant pleads guilty to a crime and he is not informed of the elements of that crime, the standard for a "voluntary, knowing, and intelligent" plea is not met and the plea is invalid. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

Petitioner makes no attempt to challenge the voluntariness of his plea, and he does not allege that the plea colloquy failed to meet the requirements of *Boykin*, 395 U.S. 238. Instead, he complains of counsel's performance during the period leading up to his entry of the plea.

Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See U.S. v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001). Petitioner's claims of ineffective assistance do not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate, but instead relate to earlier alleged constitutional deprivations. His claims have therefore been waived by his subsequent guilty plea. *See Stiger*, 20 F. App'x at 308-09; *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).

**Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this

Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:  October 7, 2016                              /s/ Gordon J. Quist
                                                                GORDON J. QUIST
                                                         UNITED STATES DISTRICT JUDGE